We'll move on to the separate, essentially cross-appeal, or what's been combined to be treated as a cross-appeal. Mr. Jaffe, are you ready to proceed? Yes, I am, Your Honor. Okay. You may. May it please the Court, Birtgen specifically argued, in his pre-hearing and post-hearing briefs to the ALJ, that Caterpillar indirectly infringes the 641 by, quote, facilitating others to perform actions using the accused machine, which Caterpillar knows will infringe, and with the intent that performance of the actions will infringe. At no point did Caterpillar argue either that it didn't have knowledge, or that Birtgen failed to prove Caterpillar's knowledge. And it couldn't do that, because Caterpillar had already made binding admissions that it knew about the patent. Under Commission Regulations 201-31, that means that under that mission, the issue is conclusively established. Therefore, the issue of whether Caterpillar had knowledge was conclusively established by the regulations. But only after the parties' briefs and evidence were in did the ALJ make the argument that Caterpillar never made. Mr. Jaffe, just a couple of things. There are obviously, as you know, two forms of knowledge. Knowledge of the existence of the patent and knowledge of the infringing character of the encouraged act. The admission that you talked about applies only to the first, right? The admission applies only to the knowledge of the patent itself. That's correct under the RFA. Right. And you did not point, is this right, point the ALJ specifically to the admission? Is that right? We did not point in our briefs to the RFA. We pointed instead to our expert essentially reciting the admission. Okay. And that's all about the citation to Q4-16? Yes. And generally the statements that are found on appendix page 15-520, which is Q15 and Q16, yes. Right. And what I'm not sure about is whether anything except the citation to Q4-16 offers anything in support of knowledge. Q4-16 might be enough. I'd like to get to that, but I don't think, tell me if I'm wrong, if any of the other citations offer anything in support. The other citations that are found in the post-hearing brief do not support specific knowledge. They support copying, but they do not support the same thing the RFA stated. And one final thing on this. Is it right that at page A256 of the ALJ's decision, when the ALJ says you didn't have enough evidence of knowledge and drops a footnote, footnote 47, saying here's the evidence you cite from page 143 of your pre-hearing brief, what the ALJ cites there actually omits any mention of the Q4-16 citation. Isn't that right? That's quite right, Your Honor. Okay. So the ALJ actually never even considered, as far as we can tell, the Q4-16 citation. That's right. And the ALJ did not consider, obviously, the other pieces of evidence that are all in the record that all point to this direction. And that's part of the problem is that, to be clear, it's not as though Virkin spent a lot of time or effort in their briefs talking about these things. The reason being is at no point did Caterpillar ever say either, no, we don't have knowledge, or even, and this is important, that Virkin has never proven or cannot prove knowledge. Rather, the first time that argument ever appeared was in the ALJ's ID. And that essentially was the ALJ making an argument that Caterpillar never did and holding it against Virkin after the point in time when Virkin could have supplemented the record, could have added more information. And to be quite clear, there was a lot of information that, if Virkin was put on notice of this, that Virkin could have cited. Virkin could have cited those RFAs. Virkin could have put in there was interrogatories on the point. Virkin could have spent more time, yielded the lily on the issue. The problem, of course, is that Virkin had no idea that this was even a disputed issue. And to say, well, Virkin, it's your burden of proof simply doesn't get far enough along. To say that, of course, it's the case that Virkin has the burden of proof. The problem part is that Virkin stated this was an issue and put in a citation to its expert on the issue and then heard nothing at all about whether or not this was going to be a further issue. And that itself is a violation of the APA, which requires that the matters of fact and law asserted be established. In fact, this is very, very similar to SAS Institute in the regard that, in that case, ComplimentSoft did not put in a different claim construction. And so there was simply no reason for SAS to spend briefing space and time talking about an issue that it did not believe was that issue. Similarly here, Caterpillar conceded that it had knowledge of the patent. It similarly conceded by not opposing it or not putting in their pre-hearing or post-hearing briefs that it had either no knowledge of its infringement or that it lacked any intent. In fact, the sole thing that Caterpillar argued in its briefing was that the underlying predicate, acts of direct infringement, did not occur. And the reason it said so is because it essentially said that its machines do not practice the method. It never said it didn't know about the patents. It didn't know about its infringement. It did not encourage that. And that, of course, doesn't make much sense. Or that makes a lot of sense that they didn't argue that because, of course, they copied Birkin's machine in order to infringe these patents. Let's go to the direct infringement counsel. You said that they legally erred because the ALJ required you to prove an actual infringer was out there and to identify one. But how do you square that with the fact that they found direct infringement with respect to the other two products? The reason that the ALJ came to different points is not because it was legally correct on the issue of the PAM 300, but on the other issues, there was actual testimony of specific individual customers using it. There's a specific quote in which Caterpillar's own witness stated that, yes, customers use the PAM 600. That was lacking in the PAM 300, but it was not a necessary point or piece of evidence for Birkin to put forward. The reason being is that the product necessarily infringed, and everyone admits that it was imported into the United States and sold to customers. Once it's in the customer's hands, that is sufficient under the law. Can I just follow up? Sure. You do seem to have some evidence on this point, but going back very specifically to what you pointed to the ALJ in your pre-hearing brief, what evidence of the PAM 300's infringement did you point to the ALJ to in the pre-hearing brief? In the pre-hearing brief? Or the post-hearing. But the post-hearing brief from yours, I think the joint appendix contains a single page, and I don't think that page is even on this subject. It is on the individual subject. Right. You can find, for example, at appendix A23294. I'm not going to direct you to that. That would be 2394. I'm sorry. I'm sorry. 23294? 3294. I'm afraid that particular – oh, 3294. 3294, yes. I apologize. Here you will see, Your Honor, that the argument, and you'll see here from hearing testimony from Engelman and from Alene, that agreeing that the monitoring – are you there, Your Honor? Yes. Okay. Agreeing that the monitoring device in all accused products monitors the position of the moldboard and side plates at all times when the rotor is engaged, and that is an automatic feature that cannot be disabled or shut off. Furthermore, obviously, this gets tripped and automatically happens whenever you drive in reverse with these machines. And there's testimony, again, from Caterpillar's own witness, stating that the normal operation of driving in reverse has to happen. I don't think I have all this in front of me. That's not in the 641 section, is it? It is. The 641. And is this – since we have so many missing pages, is this under a heading about why the 641 is being infringed? I believe that it is the – I think it might be the precursor describing how it all works. I don't know if it's under a specific section that says, in here there is direct infringement later on. So this is specifically under the 641 patent, but I don't know if it is as precise. But then when you get to 3399, this is 142, that seems to be where you're talking about infringement of the 641. And as to the PM300 series, I'm not exactly sure what you cite. Maybe it's just this Allain testimony? Yes. And if you go to Appendix 3399, which is also on infringement, you'll note that it also discusses the PM300 in there as well, including encouraging and fulfilling others and the fact that it – that it – Okay. We'll restore your rebuttal time. Let's go and hear from Mr. Lieberman. Thank you. May it please the Court. So, Worgen's appeal concerns the fact that it failed to timely and properly present and prove its claim of induced infringement before the ALJ. And as a result, Worgen's claim is waived,  So, Worgen failed to present its argument in its pre-hearing brief, arguments and evidentiary support, and thus it violated ground rules. And that's Appendix 20592. Counsel, what do you do with the fact that the ALJ made a blanket statement in its opinion that Worgen's manuals, technical presentations, and expert testimony do not demonstrate Caterpillar's knowledge? That sort of implies that the ALJ knew that its obligation was to look at everything, and now counsel has pointed us to things in the expert testimony, at least, and in the manuals that would support the knowledge component. Well, there are a couple of points. I will start with the last point. Even if you go to the expert testimony, it doesn't show the requisite knowledge elements of the induced claim infringement. For example, I would go straight to page 15520, that's question 416. And here, the expert opines about Worgen's belief that Caterpillar provides explicit instructions which infringes at least claims 11 and 17 of 641 patents. So it doesn't show the knowledge on the part of Caterpillar. It shows belief on the part of Worgen. What do you do with the fact that Caterpillar never denied knowledge? Well, Caterpillar did not have a burden to prove this claim of induced infringement in the first place. Now, in the second place, it didn't have a reason to rebut something that was not even put in front of the judge and in front of the Caterpillar, because Worgen failed to properly argue the primary case of induced infringement and consistently failed to do that in all the briefs. Mr. Liebman, this is Joe Strato. I've got to ask you to return to this 415 quote at A15520. This sentence, does it not, expressly says Caterpillar induced others to infringe 11 and 17 of 641 by selling for importation, et cetera, machines and encouraging and facilitating others to perform actions using those machines. That Caterpillar knows will infringe. Is that not an expressed assertion? I'm sorry, what question are you referring to? I just wanted to... The very same one you were reading from. Well, I'm reading from question answer 416 on page 15520. And I don't see this language that you refer to in this question. I'm sorry. I was reading from 415, which I thought is what you were referring to. 415. Okay. So, 415. Now, the language you are referring to doesn't prove... Number one, it wasn't explicitly placed before the judge. Well, I guess I have two questions about that. One is, the citation to Q416, the next one, is in the pre-hearing brief, but the ALJ seems to have overlooked it, right? Because it's not in footnote 47. Well, I have to double check that. I can go... Well, it's not. It's not in footnote 47. And then if you look at what the question is that 416 asks is, do you have any examples of such actions on behalf of Caterpillar? That is 416. That is what was cited in the pre-hearing brief. Doesn't that, by its terms, examples of such actions, immediately refer back to the answer just given in 415 and therefore constitute an answer about examples where Caterpillar knows it's encouraging infringement? Well... The language of the cited question, 416. Well, I would respond to that. Number one, it doesn't expressly, directly refer to 415, but even if you go from 416 to 415, then there is no fact that proves that Caterpillar knows that it will infringe. Even if the statement itself constitutes an allegation, there is no evidentiary proof for this statement. It's a conclusory statement. And the fact that it's an expert who is making that, it doesn't change the fact that it doesn't provide any evidence as required in this case. Go ahead. No, no, no. I know more. It's a bailout proof, even in light of the sentence. Okay, Mr. Lehman, this time I'm going to hold you to your time so we can give... Mr. Barney has a lot of time. Okay. I'm sorry, can I continue? No, we're going to hear from Mr. Barney. Okay, thank you. Thank you, Your Honor. This is Mr. Barney. So, I want to just go back to what Judge Taranto just asked, and I think everybody's clear here, but just to make sure we're clear, question and answer 416 was cited in the pre-hearing brief. Question and answer 415 was not, so that actually was not part of what Workin presented to the ALJ in support of its induced infringement argument. And I agree with... I'm sorry to jump in, but this seems to me to be what this more or less comes down to, except that citing 416, where the question begins, do you have examples of such actions, just to understand what that language means necessarily refers you to the answer just given in 415, and that's the answer that has the knowledge element. Well, Your Honor, I would just go back and point out that the ITC's rules require that specific evidence be cited in the pre-hearing and post-hearing briefs. Workin made a conscious decision for whatever tactical reason to only cite to 416, not to 415. But taking your point at face value, Your Honor, I agree with Mr. Lieberman, that even if you were to consider 416, all that is is the conclusory opinion of an expert with no basis whatsoever to show the subjective intent of Caterpillar. Did the ALJ analyze the significance of the 416 with or without 415? I don't have... I don't know, Your Honor. I guess it is striking to me that in footnote 47, which is the footnote attached to the sentence where, you know, the conclusory ALJ sentence about the evidence, says, here's the evidence that Workin put on, and it cited everything in that paragraph on 3400 except the reference to 416. Your Honor, I don't have the answer to the question other than to say that Workin, for whatever tactical reason, did not cite to 415. They want to fault the ALJ for not digging into the record and essentially making an argument on behalf of Workin to prove up one of Workin's burdens. That's not the ALJ's job. The ALJ, we believe, did what he had to do, given the arguments and the evidence that was presented to him. He found that Workin failed to carry the burden on both of the knowledge prongs, knowledge of the patent as well as knowledge of infringement. The other thing is, you know, they keep pointing to the fact that, well, Caterpillar never put any counter evidence. Caterpillar was also responding to the arguments that Workin made. And you have to remember, just to put this all in context, the reason there's very little evidence on induced infringement is because it was always an afterthought for Workin. They focused 99% of their attention on the apparatus claims and it was only after the ALJ found those apparatus claims invalid that they suddenly switched and started arguing inducement. But that was after the ALJ's initial determination. And so what they did at the commission level and what they're doing now is they're hunting and pecking through the record and trying to find... Mr. Barnes, can I just add this? Because I don't know nearly as well as you do how these things go in the ITC. So in a regular district court action, what Workin said as an allegation, which is plain on its face at 3,400, right, including the assertion of knowledge, would provoke, on the other side, a response to the effect, you have not supported that allegation with evidence and yet you did not do that in response to the pre-hearing. You didn't say, we read on the face of your paragraph at 3,400 what you were asserting, but we don't think you have enough evidence for that. You just didn't respond to it at all. Well, Your Honor, again, I would disagree that their allegation is evidence. The allegation is attorney argument. When it came time for them to put in the evidence, they didn't. They didn't cite any evidence to show the subjective intent of Caterpillar. Had they made that allegation, and what we would point to is there is tremendous evidence of good faith basis of belief of non-infringement. Are the post-hearing briefs submitted simultaneously or seriatim so that one responds to the other or what? They're submitted simultaneously, and then both sides get a chance to reply. And did you in your reply raise this question of sufficiency of evidence of the two knowledge elements of inducement? No, Your Honor. The evidence went in exactly as has been briefed. We contend they did not put in evidence on their two required knowledge prongs. The ALJ found they didn't put in evidence of the two knowledge prongs. There's substantial evidence in the record to support the ALJ's finding that they failed to prove the two knowledge prongs. If I could very briefly just turn to the direct infringement question that Judge O'Malley asked about. I'll give you one minute. Thank you, Your Honor. So on the question of the PM-300, Borkin's failure of proof is even more extensive, and that's because in addition to not proving the knowledge prongs, they failed to prove that any third party used the PM-300 to practice the claim method. Now, Borkin claims now that all it needed to show was that the machines were driven backwards, but that's incorrect. Borkin needed to show that a third party practiced all the method steps of Claims 11 and 17. They didn't carry that burden. They didn't even try. They didn't make any attempt to carry that burden. Now, remember, only three PM-300 machines were imported at the time of trial, and they were still undergoing field testing. Borkin never presented any evidence as to the nature of that field testing. It presented no evidence that customers were using it. They point to evidence now. They want you to make inferences now, but they never pointed that evidence to the ALJ. They never presented evidence that the machines were driven backwards. They never presented evidence that the machines were driven backwards with the rotor engaged, because, remember, it's not just driving backwards. You have to have the rotor engaged. You would have to know the nature of the field testing to know any of that. They just never even tried to put that evidence in, and so they are just now asking you to make factual inferences on appeal when they had the opportunity to do so at trial and they simply did not do so. Okay. Thank you. All right. Mr. Jaffe, can we start where Mr. Barney ended with your rebuttal? Yes. On the PM-300, Your Honor, there was specific evidence, and the ALJ, in fact, found multiple pieces of evidence that support Borkin. Namely, the ALJ found that Caterpillar imported the PM-300s into the United States, and that can be found in Appendix 96 through 100. Caterpillar's own witness admitted that at least one of those machines was being used by a customer, and that can be found in Appendix 19-215. Borkin explained, and as I pointed out in response to Toronto's question. I'm sorry. What was the previous one? Something about admitted? Yes. He admitted that at least one of those machines was being used by a customer. What was the citation for that? A-19-215. You can find that at 177-6 through 21. But that's not in the ALJ's? That's not. No. And was that cited by you in your argument about PM-300 direct infringement to the ALJ? We did not cite that specific point, Your Honor, that they knew of the machines being used. But we did say that the PM-300 is an automatic feature that cannot be disabled or shut down, and citing evidence for that in response, as we went through last time on page 3294. Do you dispute that even that one customer was just doing the testing? No. What we simply state is that milling machines can't turn on a dime. They're these enormous machines. So in order to be driven or used normally in their ordinary course of operation, they have to be driven in reverse. And that's what the ALJ actually found. ALJ found at A-53 to 54 that a normal part of road milling is that you reverse backwards at some point to cut a new track. Yes, correct, citing Caterpillar's own witness. And so the point being is these things are in the United States. They're being used. They automatically infringe when used as directed. But could you go backwards without satisfying all the limitations of the precise claims? If you're going backwards, there is no – no, the evidence is that it's an automatic feature. You can't shut it off. It basically results tracking. Mr. Barney, I think referred to a requirement that the rotor be engaged when you are going backwards. Is that a necessary – is that necessary to going backwards or not a claim? That's true, but it's not – but it doesn't get them very far because the problem, of course, is the reason you don't – the whole point of the patent is to be able to reverse when it is engaged. And the reason being is if you turn on and off the rotor too much, then you'll start stripping gears. And so the whole point of the patent is so that you could keep the rotor engaged while working backwards. And that is the precise thing that Caterpillar copied, the ability to go backwards with the rotor engaged without causing catastrophic problems. And so, therefore, it is the case that Caterpillar's own machine, PIM-300, does keep it engaged while it's going backwards. Okay. Thank you. Thank you, Your Honor. All right, the case will be submitted.